# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**CARLOS HOSEA,**

**Plaintiff,**

v.                                                                         **No. 19-cv-0811 SMV**

**ANDREW SAUL,**
**Commissioner of the Social Security Administration,**

**Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and/or Remand [Doc. 24], filed on March 27, 2020.  The Commissioner responded on June 24, 2020.  [Doc. 29].  Plaintiff replied on July 9, 2020.  [Doc. 30].  The parties have consented to my entering final judgment in this case.  [Doc. 25].  Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge's reasons for rejecting the marked limitations in social functioning, as assessed by Dr. LaCourt, Dr. Neswald-Potter, and Ms. Bennet, are overwhelmed by contrary evidence.  Accordingly, the Motion will be granted and the case will be remanded for further proceedings.  *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481 (1980).  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

2

to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A) (2015); 20 C.F.R. § 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 416.920 (2012); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work."  20 C.F.R. § 416.920(a)(4)(i)–(iv); *Grogan*, 399 F.3d at 1261.  If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

### Procedural Background

Plaintiff applied for supplemental security income on September 26, 2016.  Tr. 13.  He alleged a disability-onset date of May 1, 2010.  *Id.*  His claims were denied initially and on reconsideration.  *Id.*  Administrative Law Judge ("ALJ") Ben Ballengee held the administrative hearing on August 21, 2018, in Albuquerque, New Mexico.  Tr. 13, 29–65.  Plaintiff appeared with

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

a non-attorney representative.  Tr. 13.  The ALJ heard testimony from Plaintiff and, by telephone, from an impartial vocational expert ("VE") Cornelius J. Ford.  Tr. 13, 31.

The ALJ issued his unfavorable decision on January 11, 2019.  Tr. 23.  At step one he found that Plaintiff had not engaged in substantial gainful activity since September 26, 2016, the date of application.  Tr. 13.  At step two the ALJ found that Plaintiff suffered from the following severe impairments: myofascial pain syndrome, peripheral neuropathy of the bilateral feet, obesity, adjustment disorder with mixed anxiety and depressed mood, and somatic symptom disorder. Tr. 15.  The ALJ also found that Plaintiff's obstructive sleep apnea, lateral epicondylitis of the right elbow (tennis elbow), history of chronic tension headaches, and history of hypoglycemia were not severe.  Tr. 15.

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  Tr. 16–17.  Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 17–21.  The ALJ found that Plaintiff had:

> the [RFC] to perform sedentary work as defined at 20 [C.F.R. §] 416.967 and SSR 83-10, except that he can occasionally operate foot controls bilaterally.  He can occasionally climb ramps and stairs.  He can never climb ladders, ropes, or scaffolds.  He should never be exposed to unprotected heights or moving mechanical parts.  He can occasionally be exposed to extreme cold and vibration.  Mentally, he is limited to performing simple, routine tasks.  In the use of judgment, he is limited to simple, work-related decisions.  He can occasionally interact appropriately with supervisors and coworkers.  He can occasionally engage in contact with the public.  He can adapt to occasional changes in a routine work setting.

Tr. 17.

4

At step four the ALJ found that Plaintiff was not able to perform any past relevant work as a cook helper or a pantry-goods maker.  Tr. 21–22.  Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five.  Tr. 22–23.  He found that Plaintiff could perform other jobs, such as nut sorter, cigar-head piercer, and label cutter, which exist in significant numbers in the national economy.  *Id.*  Accordingly, the ALJ found that Plaintiff was not disabled.  *Id.*  The Appeals Council denied review on August 23, 2019.  Tr. 1–3.  Plaintiff timely filed the instant action on September 4, 2019.  [Doc. 1].

## Discussion

Plaintiff challenges the ALJ's evaluation of the consultative opinion of David LaCourt, Ph.D.  He also challenges the ALJ's evaluation of the treating opinion jointly proffered by Plaintiff's counselor Lena Bennet, LMSW, and his psychologist, Rhonda Neswald-Potter, Ph.D., LPCC.  These opinions were largely consistent with each other, and both assessed marked limitations in social functioning.   The ALJ gave both opinions great weight—except as to the marked limitations in social functioning; those, he rejected.  The Court finds that his reasons for rejecting the marked limitations are overwhelmed by contrary evidence.  Remand is necessary for re-evaluation of these source opinions.  The Court declines to pass on Plaintiff's other allegations of error at this time.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 416.927(e)(2)(ii) (2012)[3]).  That is, when assessing a plaintiff's

---

[3] These regulations apply to this case because Plaintiff's claims were filed prior to March 27, 2017.  *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

RFC, an ALJ must explain what weight he assigns to each medical source opinion and why.  *Id.*

When evaluating the opinion of any medical source, the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. § 416.927(c).  Not every

factor will apply in each case, and therefore, an ALJ is not required to discuss every factor.  Social

Security Ruling ("SSR") 06-03p,[4] 2006 SSR LEXIS 5 at *5.  "[T]he ALJ's decision is sufficient

if it permits [the court] to follow the adjudicator's reasoning."  *Keyes-Zachary*, 695 F.3d at 1164

(internal quotation marks omitted).

Moreover, "there is no requirement in the regulations for a direct correspondence between

an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the

ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."

*Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks

omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same).  Nevertheless, "[a]n

ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the

parts that are favorable to a finding of nondisability."  *Chapo*, 682 F.3d at 1292 (internal brackets

omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).  ALJs are required to

---

[4] SSR 06-03p was rescinded for claims filed on or after March 27, 2017.  82 Fed. Reg. 15263 (Mar. 27, 2017).  Because Plaintiff's claims were filed before March 27, 2017, SSR 06-03p applies to this case.

provide "appropriate *explanations* for accepting or rejecting such opinions."  SSR 96-5p,[5] 1996

SSR LEXIS 2, at *13, (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20

C.F.R. § 416.927(e)(2)(ii)).  "If the RFC assessment conflicts with an opinion from a medical

source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 1996 SSR

LEXIS 5, at *20.  The ALJ's reasons must be specific and legitimate.  *Chapo*, 682 F.3d at 1291.

Here, Plaintiff was seen by Dr. LaCourt for a consultative psychological evaluation on

January 10, 2017.  Tr. 542–44.  Dr. LaCourt diagnosed Plaintiff with somatic symptom disorder,

severe, persistent; persistent depressive disorder, (dysthymia), late onset with anxious distress,

moderate severity; and cannabis use disorder, moderate severity.  Tr. 543.  As is relevant here,

Dr. LaCourt found that Plaintiff had a moderate limitation in his ability to interact socially with

the public and marked limitations in his ability to socially interact with co-workers and supervisors.

Tr. 544.  Dr. LaCourt explained that Plaintiff's "slow task[-]completion issues" would contribute

to his problems with social interaction.  *Id.*

Similarly, Plaintiff was treated during the relevant time period by Ms. Bennet and

Dr. Neswald-Potter.  *See* Tr. 620.  Plaintiff was diagnosed with adjustment disorder with mixed

anxiety and depressed mood.  *Id.*  On June 20, 2018, Ms. Bennet and Dr. Neswald-Potter produced

a joint report on Plaintiff's functional limitations resulting from his mental impairments.  Tr. 731–

33.  As is relevant here, they found Plaintiff had marked[6] limitations in his ability to interact

appropriately with the public and coworkers and a moderate limitation in his ability to interact

---

[5] SSR 96-5p was rescinded for claims filed on or after March 27, 2017.  82 Fed. Reg. 15263 (Mar. 27, 2017).  Because Plaintiff's claims were filed before March 27, 2017, SSR 96-5p applies to this case.
[6] The form completed by Ms. Bennet and Dr. Neswald-Potter defined "marked" as having "a serious limitation in this area[,] a substantial loss in the ability to effectively function."  Tr. 731.

appropriately with supervisors.  Tr. 732.  They explained that his "ability to interact appropriately with other people in [the] work setting [was] affected by pain levels, depression, anxiety, and in particular social anxiety."  *Id.*

The ALJ adopted these opinions except for the marked limitations in social interactions. Tr. 21.  The ALJ's RFC assessment included a limitation to occasional interactions with supervisors, co-workers, and the public.  Tr. 17.  However, the ALJ explicitly rejected the marked limitations in social interactions.  Tr. 21.  Instead, the ALJ adopted the opinion of non-examining psychiatrist, Jill Blacharsh, M.D.  Tr. 20 (ALJ's findings); Tr. 107–08, 110–12 (Dr. Blacharsh's report).  Dr. Blacharsh had reviewed the record as it stood on February 15, 2017, including Dr. LaCourt's report.  Tr. 107–08, 110–12.  However, Dr. Blacharsh had not had the benefit of any record from Plaintiff's treating mental health providers, nor the benefit of their ultimate opinion.  *See* Tr. 103–06 (list of records reviewed by Dr. Blacharsh).  On review of the records she had available to her at the time, she was not persuaded that Plaintiff had any marked limitation in social functioning, and instead, she found that Plaintiff's limitations were moderate.  Tr. 107, 112.

The ALJ adopted Dr. Blacharsh's non-examining opinion (of moderate limitations in social functioning) over the examining and treating opinions of Dr. LaCourt, Dr. Neswald-Potter, and Ms. Bennet.  Tr. 20–21.  The ALJ explained that the record did not support marked limitations. *Id.*  For example, he found that Plaintiff's "[m]ental status examinations during treatment visits were generally unremarkable.  [Plaintiff] was consistently well[-]groomed and had a relaxed and cooperative behavior.  He frequently had a euthymic mood,[7] congruent affect, clear speech,

---

[7] Euthymia is "a normal, tranquil mental state or mood[,] specifically**:** a stable mental state or mood in those affected with bipolar disorder that is neither manic nor depressive."  *Euthymia, Merriam-Webster.com*, https://www.merriam-webster.com/medical/euthymia (last visited Sept. 9, 2020).

organized thoughts, unimpaired judgment, full orientation, and good insight." *Id.* (citing Tr. 542–44, 619–28, 668–727).  He found that Plaintiff's treatment had been "routine and conservative" with no emergency or in-patient psychiatric treatment.  Tr. 20.  Further, the ALJ noted that when Plaintiff was examined by Dr. LaCourt, he was initially irritable but became "relaxed and cooperative after only a few minutes."  Tr. 20, 21.  Lastly, as to Dr. LaCourt's opinion, the ALJ found that there were internal inconsistencies in portions of the opinion unrelated to the ability to interact socially.  *Id.*

Plaintiff challenges the ALJ's evaluation of Dr. LaCourt's opinion and the joint opinion of Ms. Bennet and Dr. Neswald-Potter.  [Doc. 24] at 19–21.  Based on the circumstances of this case, the Court agrees that the evaluations do not pass muster.  The Court finds that the reasons provided by the ALJ are overwhelmed by the evidence of marked limitations, i.e., the treating and examining source opinions.  The Court is mindful that it has no authority to re-weigh the evidence.  The Court's role is to review the ALJ's findings and compare them to the entire record to determine whether they are supported by substantial evidence.  But even where an ALJ's findings find some support, as is the case here, the decision cannot stand where the contrary evidence is overwhelming.  *Langley*, 373 F.3d at 1118.

On the one hand, the ALJ's reasons find some support in the record.  For example, the psychiatrist relied on by the ALJ, Dr. Blacharsh, found only moderate limitations in social functioning.  But she never examined Plaintiff.  Nor did she see the treatment records from Ms. Bennett and Dr. Neswald-Potter.  Nor did she see their opinion on Plaintiff's social functioning.

On the other hand, the psychologists and counselor who actually examined Plaintiff agreed—separately—that he had marked limitations in social functioning. *See* 20 C.F.R. § 416.927(c) (for claims, such as Plaintiff's, filed before March 27, 2017, the general rule is that examining opinions are entitled to more weight than non-examining opinions, and treating opinions are entitled to the most weight of all). If these opinions did not exist, the result would be different. Absent these opinions, the evidence of record would have been adequate to support the ALJ's finding of only moderate limitations. But these opinions are quite significant. They are consistent with each other. They were rendered by the only providers who examined Plaintiff. One is a treating opinion. When the Court reviews the ALJ's findings in light of the entire record, including these opinions, it becomes evident that these opinions overwhelm the reasoning by the ALJ.

Furthermore, the reasons provided by the ALJ are too attenuated from social functioning to amount to much. Plaintiff's presenting at appointments well groomed, with a congruent affect, clear speech, organized thoughts, unimpaired judgment, and full orientation could relate to social functioning, but not necessarily. Routine, conservative treatment could support moderate limitation in social functioning, but it does not necessarily undermine marked limitations. It is not obvious that these circumstances speak directly to social functioning. And the ALJ does not explain why these aspects of Plaintiff's treatment records detract from the physicians' opinions on his ability to function socially. Nor do the other parts of the ALJ's decision and the record itself shine light on the ALJ's reasoning. The ALJ's reasons do not directly bear on the grounds listed by the doctors for assessing marked limitations, to wit: Plaintiff's slow task completion, pain, or social anxiety. The ALJ did note that Plaintiff's irritability resolved within a few minutes of

beginning his examination with Dr. LaCourt, and this reason does relate to social functioning. Remand is warranted for revaluation of Plaintiff's social functioning.

Defendant argues that the ALJ's reasons are adequate to support the RFC, [Doc. 29] at 12–13, and that the concurrence of the treating and examining opinions does not overwhelm the ALJ's reasoning,[8] *id.* at 14. As explained above, however, the Court finds that the reasons provided by the ALJ (to the extent that they speak to social functioning) are overwhelmed by the evidence that supports marked limitations. The reasons provided in the decision, as it stands today, do not amount to substantial evidence sufficient to reject the marked limitations in social functioning.

Defendant further impliedly argues that Plaintiff suffered no prejudice by the rejection of the marked limitations in social functioning. *Id.* at 14–15. He supports this argument in three ways. He points out that the RFC assessment includes limitations to only occasional interactions with co-workers, supervisors, and the public. *Id.* at 14 (citing Tr. 17). He notes that the jobs identified by the ALJ at step five (nut sorter, cigar-head piercer, and label cutter) are unskilled and, as such, "can account for moderate limitations." *Id.* And he argues that that is especially true here, where the step-five jobs have a specific vocational preparation ("SVP") of 2 and people rating of 8, indicating "the lowest possible level of human interaction that exists in the labor force." *Id.* at 15 (citing *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016)).

Defendant's arguments are unpersuasive. If the disputed limitation were either something less than marked, or if the disputed limitation were in an area not critical to the performance of

---

[8] Defendant also offers his own reasons why Plaintiff may not have a marked limitation in social functioning, [Doc. 29] at 14, but these reasons were not provided by the ALJ himself, *see* Tr. 13–23. Accordingly, the Court may not rely on them. *See Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007) ("[Courts] may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

unskilled work, things might be different.  If the limitation at issue were merely moderate, then the RFC's limitation to "occasional" social interaction might be adequate to show that Plaintiff was not prejudiced.  But the limitation is not moderate—it is marked.[9]

If the limitation were merely moderate, then the unskilled jobs at step five, with SVP ratings of 2 or people ratings of 8, might be enough to show that Plaintiff was not prejudiced.  But the limitation at issue is not moderate; it is marked.  Adding marked limitations in social functioning to Plaintiff's RFC for sedentary, unskilled work would very likely mean that Plaintiff qualifies as disabled.  A "substantial loss" of the ability to respond appropriately to supervision, co-workers, and usual work situations "*will substantially erode the unskilled sedentary occupational base and would justify a finding of disability*."  POMS § DI 25015.020(B)(7) (emphasis added); § DI 25020.010(B)(3) (same).  Plaintiff was prejudiced by the ALJ's failure properly evaluate the joint opinion of Ms. Bennett and Dr. Neswald-Potter and the opinion of Dr. LaCourt.

### Conclusion

The ALJ's reasons for rejecting the marked limitations are overwhelmed by contrary evidence.  Remand is necessary for re-evaluation of the opinions from Dr. LaCourt, Ms. Bennet, and Dr. Neswald-Potter.  The other allegations of error raised by Plaintiff may be made moot on re-evaluation of these source opinions, so the Court declines to pass on them at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and/or Remand [Doc. 24] is **GRANTED**.  The Commissioner's final decision

---

[9] The ALJ knew that a limitation to occasional social interaction would not account for a marked limitation, which is why he attempted to explain his reasons for rejecting the marked limitations.  *See* Tr. 20–21.

is reversed, and this case is remanded for further proceedings in accordance with this opinion.  *See*

§ 405(g) (sentence four).

   **IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**